# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**GAIL A. BALSER,**                                    *Chapter 7*
      Debtor                                           *Case No. 10-17292-JNF*

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion of OneWest Bank, FSB ("OneWest") for

Relief from Order Denying Motion to Approve Disbursement of Surplus Funds (the "Rule

60(b) Motion").  In support of its Rule 60(b) Motion, OneWest filed the Declaration of

Nicole M. Labonte, Esq., an attorney with the law firm of Bendett & McHugh, P.C.[1]  The

Chapter 7 Trustee, Anne J. White, Esq., filed an Opposition to the Rule 60(b) Motion.  The

Court heard the Rule 60(b) Motion and the Opposition on June 19, 2013 and directed the

parties to file briefs on the legal issues presented.  In addition, the Court ordered counsel

to OneWest to file an affidavit with exhibits containing all documents relating to a

mortgage loan secured by property located at 12 Steeple Chase Circle, Attleboro,

Massachusetts (the "Property").

The Court shall apply Part VII of the Federal Rules of Bankruptcy Procedure

applicable in adversary proceedings to this contested matter.  The facts necessary to

---

[1] Steffani M. Pelton, Esq., an attorney with the law firm of Madoff & Khoury, LLP.
also filed a Declaration in opposition to Attorney Labonte's Declaration.

determine the Rule 60(b) Motion and the Opposition are not in dispute. Accordingly, the

Court shall treat the Rule 60(b) Motion as in the nature of a motion for summary judgment.

The Court now makes the following findings of fact and rulings of law in accordance with

Fed. R. Bankr. P. 7052.

The issues presented include whether the Rooker-Feldman doctrine applies to bar

this Court from reconsidering an order entered by the Bristol Superior Court, Department

of the Trial Court, on October 26, 2011, directing the clerk of that court to remit to the then

Chapter 11 Trustee surplus proceeds from an auction sale conducted at the behest of the

Board of Trustees of Churchill Court Condominium Association (the "Condo

Association"), that were deposited with the clerk of the Bristol Superior Court in an

interpleader action in which OneWest was a named defendant; and whether OneWest has

satisfied its burden under Fed. R. Civ. P. 60(b), made applicable to this proceeding by Fed.

R. Bankr. P. 9024.

**II. FACTS[2]**

Gail A. Balser (the "Debtor") filed a voluntary Chapter 11 petition on July 1, 2010.

The Court appointed Anne J. White, Esq. as Chapter 11 Trustee on September 8, 2011. On

April 30, 2013, the Chapter 11 Trustee moved to convert the Debtor's Chapter 11 case to a

case under Chapter 7. In the absence of objections, the Court granted the Chapter 11

---

[2] The Court may take judicial notice of the documents in the debtor's file and those in the Court's own records. *See* In re Lee, 472 B.R. 156, 166 n.7 (Bankr. D. Mass. 2012); In re Hyde, 334 B.R. 506, 508 n.2 (Bankr. D. Mass. 2005). *See also* In re Dessources, 430 B.R. 330, 331 n.5 (Bankr. D. Mass. 2010).

Trustee's Motion on June 4, 2013.  That same day, the U.S.  trustee appointed Attorney

White the Chapter 7 Trustee.

As noted above, the dispute between OneWest and the Chapter 7 Trustee relates to

the proceeds of a prepetition foreclosure sale of the Property. The Debtor filed her Schedule

of Assets and Liabilities and Statement of Financial Affairs on July 26, 2010.  She listed the

Property on Schedule A-Real Property with a value of $200,000, subject to a mortgage claim

of $269,782.00.  She described the Property as follows: "was held in the name of Ann Balser

for the benefit of Debtor."  She claimed the Property as exempt pursuant to 11 U.S.C. §

522(d)(5) on Schedule C-Property Claimed as Exempt.  On Schedule D-Creditors Holding

Secured Claims, the Debtor listed OneWest as the holder of a first mortgage on the

Property.  In addition to noting that the Property was held in the name of Ann Balser for

her benefit, the Debtor added:  "Opened 4/01/05 Last Active 8/1/09."  In her Statement

of Financial Affairs, the Debtor listed OneWest as a plaintiff in a lawsuit pending in the

Massachusetts Land Court, describing the suit as one pertaining to the reformation of a

mortgage.  She did not specifically link the Property to the lawsuit.  The Debtor listed no

transfers or foreclosure actions with respect to the Property in her Statement of Financial

Affairs.

On or around July 6, 2010, the Bankruptcy Court Noticing Center mailed to

OneWest "Notice of Chapter 11 Case, Meeting of Creditors, & Deadlines" at the following

address: 6900 Beatrice Drive, Kalamazoo, Michigan.  On August 3, 2010, Deidre M. Keady,

Esq., an attorney with Harmon Law Offices, P.C., filed a "Notice of Appearance and

3

Request for Service of Papers"on behalf of OneWest.

Pursuant to the Debtor's motion, on August 16, 2010, this Court established a bar date of September 16, 2010 for filing proofs of claim in the Debtor's Chapter 11 case. On September 13, 2010, Elizabeth A. Lonardo Esq., an attorney associated with Harmon Law Offices, P.C., filed a secured proof of claim on behalf of OneWest in the Debtor's Chapter 11 case in the sum of $282,839.69 with respect to the Property.[3] OneWest attached to its proof of claim a mortgage granted by the Debtor to MERS as nominee for NetBank dated May 9, 2005, together with a 1-4 Family Rider (Assignment of Rent), listing the property address as 12 Steeplechase [sic] Circle, Unit 12, Attleboro, Massachusetts. The mortgage identified the Debtor as the "Borrower" and provided that "[t]he Note states that Borrower owes Lender Two Hundred Sixty Nine Thousand Nine Hundred and 00/100ths Dollars

---

[3] It set forth its claim as follows:

Itemized statement of additional charges

       Principal $ 259,782.37
       Interest to 07/01/2010 $ 14,288.04
       Legal Fees and Costs $ 1,021.54
       Accrued Late Fees $ 433.10
       Escrow Advances $ 7,014.64
       Post-Petition Pre-Confirmation Legal Fees and Costs $ 300.00
       TOTAL $ 282,839.69

Itemized statement of pre-petition arrearage

       10 payments at $1,685.96 (09/09 – 06/10) $ 16,859.60
       1 payments at $2,140.30 (07/10) $ 2,140.30
       Late Fees $ 433.10
       Legal Fees and Costs $ 1,021.54
       Escrow Shortage $ 5,712.26
       TOTAL $ 26,166.80

4

(U.S. $269,900.00) plus interest. . . ."  OneWest also attached to the note an unrecorded

assignment of the mortgage from MERS to OneWest, dated February 3, 2000.  It amended

the claim twice, once on September 16, 2010, and again on December 21, 2012.  In its first

amended proof of claim, it set forth an arrearage of $26,474.52.  In the second, it set forth

the amount of the claim as $278,404.94.

On December 9, 2010, approximately five months after the commencement of her

Chapter 11 case, the Debtor moved for authority to use cash collateral.  She identified the

following properties as sources of cash collateral:

> 10 Steeple Chase Circle, Attleboro, MA – a condominium
> 11 Steeple Chase Circle, Attleboro, MA --a condominium
> 10 Steeple Chase Circle, Attleboro, MA --a condominium
> 387 Old Colony Road, Norton, MA – a single family house
> 468 Old Post Road, North Attleboro, MA -- a two family house
> 244 County Street, Attleboro, MA --    a single family house/office building

The Condo Association, through its attorney, Steffani Pelton, Esq., filed a Response

to Debtor's Motion to Use Cash Collateral.  It stated:

> The Debtor's cash flow projections are incorrect and misleading on several
> grounds, namely, that: (i) the cash flow projections rely on purported rental
> income from the condominium located at 12 Steeple Chase Circle, Attleboro,
> Massachusetts ("Unit 12"), in which property the Debtor holds no right, title
> or interest; and (ii) the projections incorrectly state that the Debtor has been
> paying various condominium fees since September 2010, when, in fact, no
> such fees have been or are being paid.

The Condo Association added:

> On May 14, 2010, pursuant to an Order and Judgment of the Attleboro
> District Court, a copy of which is attached hereto as Exhibit "A" (the "State
> Court Matter") and pursuant to the provisions [of] Massachusetts General
> Laws ch. 183A § 6 (the Massachusetts condominium lien statute) and
> Massachusetts General Laws ch. 254 §§ 5 and 5A, the Board of Trustees of

5

Churchill Court Condominium Association sold Unit 12 to Eric Birt (the "Buyer"), the highest bidder at auction (the "Sale") for the sum of $177,500.00 as a means of satisfying the Association's priority lien for unpaid monthly condominium fees assessed to Unit 12. . . .

The Debtor had appeared at [sic] the State Court Matter and had vigorously defended that action on her own behalf and as attorney of record for Ann B. Balser, the Debtor's mother and the owner of Unit 12. Subsequent to the State Court Matter, both Ann B. Balser and the Debtor were duly served with notice of the Sale pursuant to the provision of Massachusetts General Laws ch. 254 §§ 5 and 5A. The Debtor has no basis for denying her knowledge that Unit 12 was sold to a third party prior to the filing of her Chapter 11 case.

As noted above, at the time of the Sale, Unit 12 was owned by Ann B. Balser. A copy of the deed transferring Unit 12 to Ann B. Balser is attached hereto as Exhibit "C".

\*\*\*

As a result of the Sale to Eric Birt on May 14, 2010, Ann B. Balser had no interest in Unit 12 to convey to the Debtor on July 28, 2010. Thus, the attempt to transfer Unit 12 to the Debtor at that time was void and without effect. As such, the Debtor has no right title or interest in and to 12 Steeple Chase Circle, Attleboro, Massachusetts and therefore has no legal right or ability to collect any rents from the occupants of that property. Accordingly, . . . the Debtor's inclusion of rents from Unit 12 in her Cash Flow Projections attached to the Cash Collateral Motion is both incorrect and misleading.[4]

In addition, on December 30, 2010, OneWest, through Attorney Deidre M. Keady, filed an

Objection to the Debtor's use of cash collateral, asserting that it was the present holder of

a mortgage on the Property with a total debt of $282,839.60.  It also stated:

Regarding the property identified as 12 Steeple Chase Circle, Attleboro, MA, the debtor does not hold record title to said property. Legal title has been

---

[4] The deed from Gail Balser to her mother Ann B. Balser is dated April 20, 2006; the deed was recorded on April 24, 2006.  The deed reflects a conveyance of the Property, as well as Unit 11, for a consideration of $1.00.  Significantly, the deed does not identify Ann Balser as a trustee of any trust for the benefit of the Debtor.

vested in Ann Balser since 2006 wherein Gail A. Balser transferred title as an
individual to Ann B. Balser, by deed recorded at Book 15804, Page 106. Your
movant believes that this property is not part of the estate of this debtor and
should not be listed as an estate asset or as part of the cash collateral motion.

On January 18, 2011, the Court held a hearing on the cash collateral motion at which

Attorney Kathryn Fyans appeared on behalf of OneWest.  The Court granted the Debtor

authority to use cash collateral, subject to conditions set forth on the record.

On March 7, 2011, the Debtor amended Schedule B-Personal Property.  She disclosed

a 100% interest in BSI Trust, as well as other trusts and transfers not previously disclosed

on Schedule B.   Referencing the Property indirectly, she stated: "Unit 12 deed out

3/3/2005[;] condo homeowner foreclosed."  On March 19, 2011, the Debtor further

amended her Schedules, again stating "Unit 12  deed out 3/3/2005[;] condo homeowner

foreclosed."

As noted above, the Court appointed a Chapter 11 Trustee on September 8, 2011.

In a Report filed on October 28, 2011, the Trustee reported that she had discovered that

"approximately $100,000 is recoverable in connection with a pre-petition foreclosure sale,"

adding that "[t]he funds were deposited with the state court in an interpleader action."

The Trustee also disclosed that on May 14, 2010, approximately two months before the

petition date, the Condo Association sold the Property at auction and "[t]hereafter, when

no secured party presented evidence of its security, the Condo Association filed a

Complaint for Interpleader And Declaratory Relief."  According to the Trustee, because no

creditors answered the complaint, the purported mortgage lenders were defaulted.  The

Trustee stated that she had made demand for turnover.  The Trustee served her Report on

OneWest and four attorneys at Harmon Law Offices, P.C.:  Attorneys Fyans, Keady, Jason

Giguere, and Richard T. Mulligan.  In addition, she served Martin A. Mooney, Esq., who

also had filed a notice of appearance on behalf of OneWest on October 25, 2011.  Moreover,

an attorney for OneWest appeared at a status conference conducted on October 31, 2011.

On November 28, 2011, the Chapter 11 Trustee filed a second Status Report,

providing more details about the state court proceeding involving the proceeds of the sale

of the Property.  She stated:

> On November 2, 2011, the Trustee received a check from the Bristol County
> Clerk's office in the amount of $136,626.32 which was the balance of the
> surplus funds in connection with a pre-petition foreclosure sale.
> Approximately two months prior to the Petition Date, on May 14, 2010, the
> Board of Trustees of Churchill Court Condominium Association (the "Condo
> Association") sold at auction condominium Unit 12 Steeple Chase Circle,
> Attleboro, Massachusetts.  Thereafter, when no secured party presented
> evidence of its security, the Condo Association filed a Complaint for
> Interpleader And Declaratory Relief entitled Board of Trustees of Churchill
> Court Condominium Association, Plaintiff vs. Ann B. Balser, Gail A. Balser,
> Bishop Street Investment Company, Inc., Mortgage Electronic Registration
> Systems, Inc. and Netbank & Onewest [sic] Bank, FSB, Defendants, Bristol
> Superior Court, Civil Docket No. BRCV2011-00292 (the "State Court
> Action").  In the State Court Action, no creditor answered the complaint and
> the purported mortgage lenders were defaulted.  When the Trustee recently
> became aware of the surplus funds, the Trustee asserted claim to the funds
> as property of the bankruptcy estate.  The Trustee assented (by settlement in
> the State Court Action) to the charges of $502.48 of the Condo Association
> and requested turnover of the balance.  On October 26, 2011, in the State
> Court Action, the State Court entered a judgment and Order which
> (1)permanently enjoined the subject defendants from instituting any action
> to recover the surplus funds and (2) ordered that the remaining balance of
> the surplus funds on deposit with the Clerk's Office be remitted to the
> Trustee to administer these funds in accordance with the further continuing
> orders of the U.S. Bankruptcy Court (the "State Court Payment Order").

> . . .  It has now been over thirty days since the State Court Payment Order
> and the State Court appeal period has lapsed with no appeal having been

filed.  The State Court Payment Order is binding and final and accordingly,
the funds are now an asset of this bankruptcy estate.

In a footnote, the Chapter 11 Trustee observed that the Rooker-Feldman doctrine would

appear to be applicable.  The Trustee served her Report on OneWest, several attorneys at

Harmon Law Offices, P.C., and Attorney Martin A. Mooney.

On December 12, 2012, almost two years after filing its Objection to the Debtor's

Motion for Authority to Use Cash Collateral, OneWest, through Attorneys Peter E. Jones

and Nicole M. Labonte of the firm of Bendett & McHugh, P.C., filed a "Motion to Approve

Disbursement of Surplus Funds from May 14, 2010 Condominium Sale of Property Located

at 12 Steeplechase Circle, Unit 12, Attleboro, MA" (the "Disbursement Motion").  While

recognizing that the Condo Association sold the Property pursuant to a judgment and

order[5] on May 14, 2010, OneWest noted that after the  foreclosure sale Ann Balser

purported to convey the Property to the Debtor for consideration of $1.00.  It stated that

"[b]ecause the Condominium Association's sale of the Property was free of any right of

redemption of the unit owner, Ann B. Balser, in the Property, she had no right, title, and/or

interest in the Property to convey to the Debtor on July 27, 2010."  Citing Mass. Gen. Laws

ch. 254, § 5, it added:  "the purported Unit Deed from Ann B. Balser to Debtor is void and

ineffectual."  OneWest concluded that any surplus funds from the foreclosure sale are not

part of the Debtor's bankruptcy estate, although it pointed to the proofs of claim it filed to

---

[5] The May 10, 2010 order of the Attleboro District Court provided that "[t]he
proceeds of the sale shall be first applied to the amount of the priority lien accorded by
G.L. c. 183A, § 6, and paid to the Plaintiffs.  The remaining proceeds, if any shall be paid
to lienholders on the Unit according to their priority in amounts then due."

argue that it was owed the sum of $278,404.94 under the mortgage, a debt significantly greater than the amount of the surplus.

The Trustee objected to OneWest's Motion, arguing that it was an attempt to circumvent final orders of the state court which were entered in an appropriate interpleader action, adding that OneWest now lacked a security interest in funds of the bankruptcy estate. The Trustee maintained that the "State Court Payment Order" was binding and final, and the Surplus Funds are assets of the bankruptcy estate.[6] The Trustee added that Ann Balser effectively waived any claim to the surplus funds by executing a deed conveying the Property to the Debtor on July 28, 2010.[7] The Trustee also raised the Rooker-Feldman doctrine, as well as laches and detrimental reliance in support of her position. The Debtor joined the Chapter 11 Trustee's Opposition.

The Court scheduled a hearing on OneWest's Disbursement Motion for January 16, 2013. Attorneys for OneWest failed to appear at the hearing. Accordingly, the Court

---

[6] The Trustee attached a copy of the order of the Bristol Superior Court. It provided in pertinent part the following:

> [T]he above named Defendants are hereby permanently enjoined from instituting any action against the Plaintiff Association for any recovery as to the surplus funds remaining following the authorized auction of the subject property . . .

> The remaining balance of the surplus funds on deposit with the Clerk's Office shall be remitted in a check payable to "Anne J. White, Chapter 11 Trustee of Gail A. Balser," with the Trustee to administer these funds in accordance with the further continuing orders of the U.S. Bankruptcy Court.

[7] The deed from Ann Balser to Gail Balser is dated July 27, 2010; it was recorded on July 28, 2010.

sustained the Trustee's Objection and denied OneWest's Motion, citing the Rooker-Feldman doctrine and the elimination of the junior liens resulting from the foreclosure sale.

Approximately four months after the denial of the Disbursement Motion, on May 8, 2013, OneWest filed its Motion for Relief from Order pursuant to Fed. R. Civ. P. 60(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 9024, together with the Declaration of Attorney Labonte.  In its Rule 60(b) Motion, which was filed by successor counsel to OneWest,[8] One West stated:

> The issuance of a default judgment in the related Massachusetts Superior Court action does not preclude OneWest's request for a disbursement. That default was contemplated by the parties to that action to streamline the disbursement of the surplus funds to OneWest. Unfortunately, based on what appears to have been an administrative error, OneWest's prior counsel did not attend the hearing on the Disbursement Motion to inform this Court about that agreement. OneWest has obtained new counsel and should not lose its right to obtain the surplus funds based on *prior* counsel's administrative foible.

In its Rule 60(b) Motion, OneWest represented that counsel to the Condo Association, Attorney Pelton, did not dispute OneWest's claim to the surplus funds and that she informed counsel to OneWest that filing an answer to the interpleader action would delay disbursement of the surplus proceeds.  Specifically, OneWest represented, based upon the Declaration of Attorney Labonte, that "on or about August 2, 2011, counsel to the Interpleader Action agreed that OneWest would withhold filing its Answer, and

---

[8] On May 8, 2013, David G. Thomas, Esq. of Greenberg, Traurig, LLP, filed a Notice of Appearance on behalf of OneWest.  Notably, prior to the notice of appearance filed by Attorney Thomas, OneWest has been represented in this case by numerous other attorneys, including Attorney Deirdre Keady, Attorney Elizabeth Lonardo, and Attorney Kathryn Fyans of Harmon Law Offices, P.C., and  Attorneys Peter E. Jones and Nicole Labonte of Bendett & McHugh, P.C.

subsequently be defaulted in that action," adding that "OneWest only agreed not to file its

Answer – which was already drafted – based on the suggestion of Churchill Court's

counsel to foster a swift resolution to the matter."  OneWest also stated that prior counsel

failed to appear at the January 16, 2013 hearing due to administrative error.

Notably, Attorney Pelton disputed the assertion made by Attorney Labonte in her

Declaration, namely the suggestion that the entry of a default would expedite the

interpleader action.  Indeed, the emails attached to Attorney Labonte's Declaration do not

support her assertion that Attorney Pelton's alleged suggestion was responsible for the

entry of a default.  In an email dated July 18, 2011, Attorney Pelton stated:

> You guys are going to need to file an appearance and answer in the Superior
> Court action.  I cannot/will not disburse any of the funds we are holding
> without Court approval.  I have already forwarded Jeffrey [Attorney Jeffrey
> J. Hardiman of Bendett & McHugh, P.C] a copy of the Complaint.  I am
> currently seeking to have all defendants defaulted because nobody has
> appeared.
>
> At this point, I'm not even clear about who your client is and whether they
> even have an interest in the funds.  The records at the registry of deeds show
> that the mortgagee is MERS and the MERS website shows the servicer is
> OneWest.  You attached a payoff statement from IndyMac, but the records
> I have do not show them as even being an interested party.  I had been
> operating under the assumption that you represented OneWest.

An email from Attorney Labonte to Attorney Pelton establishes that although OneWest had

drafted an Answer to the interpleader complaint, had it filed that Answer it would have

been untimely ("I would  . . . appreciate your agreeing to my client filing the attached

Answer at this time, to the extent that it is out of time.").  More significantly, Attorney

Labonte, as of July 28, 2011, did not have "100% authority" from her client to file a notice

of appearance and Answer.  In addition, she stated:

> With respect to my clients being entitled to the funds, first, your client's Complaint is correct in that MERS is the current mortgagee and OneWest is the servicer on the underlying loan.  . . .  "IndyMac Bank, FSB" and "IndyMac Mortgage Servicers" are no longer a viable corporate entities {sic}. OneWest succeeded to all of IndyMac's rights and assets in a receivership proceeding in July 2008.  The attached Payoff Statement shows the most recent balance due on the loan, to which OneWest is the successor-in-interest to IndyMac.  MERS remains the mortgagee on the mortgage, which was in original principal amount [sic] of $269,900.00 dated May 9, 2005 and recorded on May 10, 2005 . . . As would have been the case if my client had gone through with the foreclosure it began in 2008 before your client stepped in to assert its rights, MERS is likely to assign the mortgage and underlying note to OneWest for the purposes of receiving the funds that are the excess funds from your client's sale.  Either way, under the mortgage, MERS now, and OneWest alternatively if an Assignment is recorded, is entitled to the funds.

With respect to the merits of its Rule 60(b) Motion, OneWest stated:

> Although Massachusetts law provides for the creation of a superlien that is entitled to priority over other lienholders in certain situations, the statute does not extinguish the lien of the first mortgagee – here, OneWest. *See* MASS. GEN. LAWS ch. 183A §. 6. Rather, Massachusetts law dictates that OneWest was entitled to the Surplus before all others. *See* MASS. GEN. LAWS ch. 254 § 21; *see also* <u>First Colonial Bank for Savings [v. Bergeron]</u>, 38 Mass. App. Ct. [136] at 137-8, 646 N.E.2d at 759-60 [(1995)]. Because OneWest is the first mortgagee, it is entitled to the Surplus as a matter of law.

OneWest asserted that it is entitled to relief from judgment because it was unrepresented by *prior* counsel at the hearing and thus unable to explain to this Court that the default did not foreclose its right to the surplus.  Citing <u>Hugel v. McNell</u>, 886 F.2d 1, 6 (1st Cir. 1989), *cert. denied,* 494 U.S. 1079 (1990), and <u>Eastern Savs. Bank, FSB v. LaFata (In re LaFata)</u>, 344 B.R. 715, 726 (1st Cir. 2006), *aff'd,* 483 F.3d 13 (1st Cir. 2007), it maintained that Rule 60(b)(6) permits relief when "equitable considerations so counsel."

The Trustee objected to the Rule 60(b) Motion, stating that "there has been no

excusable neglect and no newly discovered evidence."

As noted above, the Court conducted a hearing on OneWest's Rule 60(b) Motion on June 19, 2013 and directed the parties to file briefs on the legal issues raised. In addition, the Court directed OneWest to file an affidavit with documents relating to the original mortgage loan with respect to the Property.

## III. DISCUSSION

A. <u>The Rooker-Feldman Doctrine</u>

The Rooker–Feldman doctrine[9] bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."<u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." <u>In re Sanders</u>, 408 B.R. 25, 33 (Bankr. E.D.N.Y. 2009) (citing <u>Book v. Mortgage Elec. Registration Systems</u>, 608 F.Supp.2d

---

[9] According to the United States Bankruptcy Appellate Panel of the First Circuit,

The doctrine is derived from two Supreme Court decisions: <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). <u>Rooker</u> held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the U.S. Supreme Court and is beyond the original jurisdiction of federal district courts. <em>See</em> 263 U.S. at 415–16, 44 S.Ct. 149. <u>Feldman</u> held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. <em>See</em> 460 U.S. at 486–87, 103 S.Ct. 1303.

<u>Schwartz v. Schwartz (In re Schwartz)</u>, 409 B.R. 240, 246 n.4 (B.A.P. 1st Cir. 2008).

277, 288 (D. Conn. 2009), and <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 84

(2d Cir. 2005)).  *See, e.g.,* <u>New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re</u>

<u>Middlesex Power Equip. & Marine, Inc.)</u>, 292 F.3d 61 (1st Cir. 2002); <u>Heghmann v. Indorf</u>

<u>(In re Heghmann )</u>, 316 B.R. 395, 403 (B.A.P. 1st Cir. 2004); <u>Xytest Corp. v. Mitchell (In re</u>

<u>Mitchell)</u>, 255 B.R. 97, 106 (Bankr. D. Mass. 2000).  "Courts in the First Circuit interpreting

the doctrine have held that it forecloses lower federal court jurisdiction where the issues

in the case are 'inextricably intertwined' with questions previously adjudicated by a state

court." <u>In re Schwartz</u>, 409 B.R. at 247 (citations omitted). "A federal claim is 'inextricably

intertwined' with state court claims 'if the federal claim succeeds only to the extent that the

state court wrongly decided the issues before it.'" <u>Id.</u> (quoting <u>Sheehan v. Marr</u>, 207 F.3d

35, 40 (1st Cir. 2000), and citing <u>Hill v. Town of Conway</u>, 193 F.3d 33, 39 (1st Cir. 1999)).

Thus, the doctrine "precludes a federal action if the relief requested in the federal action

'would effectively reverse the state court decision or void its holding.'" <u>Schwartz</u>, 409 B.R.

at 247 (citations omitted).

       While the Rooker-Feldman doctrine may at first blush appear to be relevant to

preclude this Court from exercising jurisdiction over OneWest's claim to the surplus

proceeds, the order of the Bristol Superior Court, dated October 26, 2011 remitting the

balance of the surplus funds to the Chapter 11 Trustee to administer specifically provided

that the Trustee was to administer the funds "in accordance with the further continuing

orders of the U.S. Bankruptcy Court." Thus, this Court is not deprived of jurisdiction under

the Rooker-Feldman doctrine to determine the issues relating to the surplus funds.

B. <u>The Rule 60(b) Motion</u>

    1. Applicable Law

Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or
> his legal representative from a final judgment, order, or proceeding for the
> following reasons:
>
> > (1) mistake, inadvertence, surprise, or excusable neglect;
> >
> > (2) newly discovered evidence which by due diligence could
> > not have been discovered in time to move for a new trial under
> > Rule 59(b);
> >
> > (3) fraud (whether heretofore denominated intrinsic or
> > extrinsic), misrepresentation, or other misconduct of an
> > adverse party;
> >
> > (4) the judgment is void;
> >
> > (5) the judgment has been satisfied, released, or discharged, or
> > a prior judgment upon which it is based has been reversed or
> > otherwise vacated, or it is no longer equitable that the
> > judgment should have prospective application; or
> >
> > (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

    This Court in <u>RBSF, LLC v. Franklin (In re Franklin)</u>, 445 B.R. 34 (Bankr. D. Mass.

2011), examined the contours of Rule 60(b) in the context of a motion to reconsider an order

denying a plaintiff leave to amend an adversary complaint.  This Court stated:

> According to the United States Court of Appeals for the First Circuit, in the
> context of a motion to vacate a default judgment, Rule 60(b)(6), "is a catch-all
> provision" and "[t]he decision to grant or deny such relief is inherently
> equitable in nature." <u>Ungar v. The Palestine Liberation Organization</u>, 599
> F.3d 79, 83 (1st Cir. 2010) (citing <u>United States v. One Star Class Sloop</u>

<u>Sailboat</u>, 458 F.3d 16, 25–26 & n. 10 (1st Cir. 2006); and <u>Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.</u>, 953 F.2d 17, 19–20 (1st Cir. 1992)). According to the First Circuit, however, "it is the invariable rule, and thus, the rule in this circuit, that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise." <u>Teamsters</u>, 953 F.2d at 20. Additionally,

> A variety of factors can help an inquiring court to strike the requisite balance. Such factors include the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims of defense, and the presence or absence of exceptional circumstances. This compendium is neither exclusive nor rigidly applied. <u>Id.</u> Rather, the listed factors are incorporated into a holistic appraisal of the circumstances. In a particular case, that appraisal may-or may not-justify the extraordinary remedy of vacatur.

> <u>Ungar</u>, 599 F.3d at 83–84 (footnote omitted, citations omitted). Thus, the contours of a motion for reconsideration, determination of which is reviewed for abuse of discretion, is "peculiarly malleable" and "hard-and-fast rules generally are not compatible with Rule 60(b)(6) determinations." <u>Id.</u> at 84 (citations omitted).

<u>In re Franklin</u>, 445 B.R. at 46. This Court added: "In bankruptcy cases, courts in this district routinely hold that motions for reconsideration are not "a means by which parties can rehash previously made arguments" and that to succeed on motions to reconsider, the movant must "show newly discovered evidence or a manifest error of fact or law." <u>Id.</u> citing <u>In re Wedgestone Financial</u>, 142 B.R. 7, 8 (Bankr. D. Mass.1992) (citations omitted)).

2. Positions of the Parties

Although OneWest recognized as a general maxim that a client is bound by the acts of its attorney, it maintains that a party harmed by those acts may avail itself of the "escape hatch" provided by Rule 60(b). It cited <u>Boughner v. Sec'y of Health, Educ. & Welfare</u>, 572

F.2d 976 (3d Cir. 1978), in which the United States Court of Appeals for the Third Circuit

permitted relief under Rule 60(b)(6), even in the absence of mistake, inadvertence or

excusable neglect under Rule 60(b)(1), where an attorney's neglect was "so gross that it

[was] inexcusable." Id. at 978. The court in Boughner observed:

> In making this determination we are aware that Rule 60(b)(6), which permits
> the vacating of a judgment "for any other reason justifying relief," provides
> an extraordinary remedy and may be invoked only upon a showing of
> exceptional circumstances. Ackerman v. United States, 340 U.S. 193, 202, 71
> S.Ct. 209, 95 L.Ed. 207 (1950); Vecchione v. Wohlgemuth, 558 F.2d 150, 159
> (3d Cir. 1977). The party seeking relief has the burden of showing that absent
> such relief, an "extreme" and "unexpected" hardship will result. United
> States v. Swift, 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932); Mayberry
> v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977).

Boughner, 572 F.3d at 978 (footnote omitted). The court noted that "[r]elief pursuant to

subsection (6) is only available where subsections (1) through (5) do not apply. Id. at 978

n.8 (citing Stradley v. Cortez, 518 F.2d 488, 493 (3d Cir. 1975)). Specifically, in Boughner,

the Third Circuit determined that an attorney's failure to respond to a motion for summary

judgment, which precluded an adjudication on the merits, was inexcusable and created an

extreme and unexpected hardship. 572 F.3d at 979.

OneWest argued that "the conduct of OneWest's prior counsel was inexcusable and

amounted to gross neglect sufficient to trigger the equitable provisions of Rule 60(b)(6)

because it effectively prevented OneWest from adjudicating the merits of its priority claim

to the Surplus." It cited the entry of a default judgment in the interpleader action, prior

counsel's failure to attend the hearing on the Disbursement Motion and prior counsel's

failure to file a reply to the Trustee's Opposition to that motion; as well as prior counsel's

18

failure to "present a true picture of the chain of title to the Property to the Superior Court and this Court.[10]  It further argued that the circumstances demonstrate "that prior counsel "constructively disappeared" from the case and left OneWest unrepresented and unable to protect its rights," adding that "OneWest was denied the opportunity to secure the Surplus that it is entitled to receive under Massachusetts law, i.e., to adjudicate the merits of its priority claim."

In response, the Chapter 7 Trustee argued that the Rule 60(b) Motion lacks merit. She pointed to the Status Reports and disclosure statements she filed as Chapter 11 Trustee in which she repeatedly referenced the surplus funds and their potential use in funding a Chapter 11 plan, as well as the presence of OneWest's counsel at a status conference on October 31, 2011, at which counsel to OneWest voiced no objections to the Trustee's position.   In addition, the Trustee pointed to time spent preparing various disclosure statements and plans, as well as time spent addressing the Disbursement Motion and the Rule 60(b) Motion.

The Trustee, quoting <u>Ford Motor Co. v. Mustangs Unlimited, Inc.</u>, 487 F.3d 465 (6th Cir. 2007), argued:

> "Courts . . . must apply subsection (b)(6) only as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present." <u>Olle [(Olle v. Henry & Wright Corp.,</u> 910 F.2d 357 (6th Cir.1990)]</u>, 910 F.2d at 365 (internal quotation marks omitted). "The 'something more' . . . must include unusual and extreme situations where principles of equity mandate relief." <u>Id.</u> "There are few

---

[10] Notably, present counsel similarly failed to present a true picture of the chain of title as it represented that "[t]he actual borrower was Ann Balser, not the debtor, Gail Balser," which was incorrect.

> cases elaborating on the 'something more' that is required. This may be
> explained . . . by the fact that clauses 1–5 of the Rule cover almost every
> conceivable ground for relief."

Mustangs Unlimited, 487 F.3d at 468-69.  In rejecting OneWest's arguments, the Trustee

pointed to OneWest's position at the October 31, 2011 hearing; its delay in filing the

Disbursement Motion, and its failure to reference its position in the state court interpleader

action, namely that Attorney Pelton allegedly encouraged Attorney Labonte to accept a

default to expedite the state court proceeding.  She also asserted that the Boughner decision

cited by OneWest has been rejected in other jurisdictions, including the First Circuit in KPS

& Assocs., Inc. v. Designs by FMC, Inc. 318 F.3d 1 (1st Cir. 2003).

In KPS, the defendant, referencing Community Dental Services v. Tani, 282 F.3d

1164, 1170 (9th Cir. 2002), sought relief from a default judgment because its attorney was

"'grossly negligent in fabricating a false explanation.'" Id. at 16. The First Circuit stated:

> There are two serious flaws in Designs' reliance on the Ninth Circuit's
> decision in Tani. First, in this circuit we have consistently "turned a deaf ear
> to the plea that the sins of the attorney should not be visited upon the client."
> Farm Constr. Servs., Inc. v. Fudge, 831 F.2d 18, 21 (1st Cir. 1987). We need not
> decide, however, whether to make an exception to this widely accepted rule
> because of the second defect in Designs' argument: "It is hornbook law that
> theories not raised squarely in the district court cannot be surfaced for the
> first time on appeal." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d
> 731, 749 (1st Cir.1995).
>
> The cases cited by Designs are not to the contrary. In Tani the defendant
> dismissed his "grossly negligent" counsel, and Tani's new counsel sought
> 60(b) relief in the first instance in the district court. See Tani, 282 F.3d at 1167.
> In Carter v. Albert Einstein Medical Center, 804 F.2d 805 (3d Cir. 1986), the
> plaintiff discharged his attorney and, proceeding pro se, first sought Rule
> 60(b) relief in the district court under a "gross negligence" theory prior to
> making the same argument on appeal. Id. at 806–07; see also Boughner v.
> Sec'y of HEW, 572 F.2d 976, 977 (3d Cir. 1978) ( Rule 60(b) claim first raised

20

in district court by new counsel). The final case cited by Designs, <u>Shepard</u>
<u>Claims Service, Inc. v. William Darrah & Associates</u>, 796 F.2d 190 (6th
Cir.1986), is altogether inapposite in that it concerns a Rule 55(c) motion to
set aside the entry of default (not a Rule 60(b) motion to set aside a default
judgment). The appellate courts subscribing to Designs' "gross negligence"
theory of relief have thus required the claim to be raised first in the district
court—properly so, in our view, given "the superior opportunity for the trial
judge to assess the challenged conduct." <u>Carter</u>, 804 F.2d at 807. We therefore
reject Designs' claim for Rule 60(b) relief.

318 F.3d. at 16-17.

The Trustee also argued that she and the creditors of the Debtor's bankruptcy estate

will suffer unfair prejudice if the Court affords relief to OneWest. She added that OneWest

has not proffered evidence that the note accompanying the mortgage was assigned to it as

there is no endorsement by NetBank on the note.

In addition, the Trustee relied upon <u>Nat'l Lumber Co. v. The Canton Inst. for Savs.</u>,

56 Mass. App. Ct. 186 (2002).[11] Finally, the Trustee asserted that Attorney Labonte's

---

[11] The court in <u>Nat'l Lumber</u> stated:

Contrary to the plaintiff's assertion on appeal, its claims against the bank all
rest on a determination of the validity of its lien, and the priority of that lien
as against the bank's mortgage and the liens held by other potential
claimants. The plaintiff's claims in fact go directly to the determination of
which portion of the foreclosure proceeds are "surplus." Indeed, if the
plaintiff were allowed to raise its claim to a portion of sale proceeds after a
judgment in the interpleader action authorized payment of proceeds to a
junior lienor, the bank would be severely prejudiced. The very purpose of
interpleader in a context such as this is to sort out the amounts and
priorities of competing claims to a fund. We conclude that the counterclaims
arise from the same transaction and occurrence as the subject matter of the
interpleader action, and that they were compulsory within the meaning of
Mass.R.Civ.P. 13(a). The plaintiff is accordingly barred from raising its
claims in the present complaint, and the judgment of dismissal is affirmed.

56 Mass. App. Ct. at 188-89 (footnote omitted).

Declaration is implausible.

### 3. Analysis

The Court concludes that OneWest's reliance on the alleged gross negligence of its prior counsel as an exceptional circumstance warranting relief under Rule 60(b)(6) is without merit. Although OneWest pointed to gross negligence on the part of its counsel, it submitted no evidence as to how and when a OneWest officer or employee with authority to engage and direct counsel on behalf of OneWest provided its various attorneys with instructions as to how to proceed in this case and the state court interpleader action. As the court noted in Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc., 803 F.2d 1130 (11th Cir. 1986),

> Some courts have held that attorney error comes within the scope of 60(b)(6) even though it does not constitute excusable neglect under 60(b)(1). *See, e.g.,* Boughner v. Secretary of H.E.W., 572 F.2d 976 (3d Cir.1978); L.P. Steuart, Inc. v. Matthews, 329 F.2d 234 (D.C. Cir.), *cert. denied*, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964); Transport Pool Division of Container Leasing, Inc. v. Joe Jones Trucking Co., 319 F.Supp. 1308 (N.D. Ga. 1970). However, these cases specifically require gross neglect or other exceptional circumstances and indicate that *the client was generally diligent despite its attorney's lapses.* Boughner, 572 F.2d at 977-78; L.P. Steuart, 329 F.2d at 236-37; Transport Pool, 319 F.Supp. at 1311-12. Bio-Energy has demonstrated neither gross misconduct by its counsel nor its own diligence, especially considering that it received a copy of the notice. Thus these cases are inapplicable.
>
> There is also a more fundamental reason why these cases are inapplicable. Although 60(b)(6) provides a residual equitable authority for vacating judgments, this Court consistently has held that 60(b)(1) and (b)(6) are mutually exclusive. Therefore, a court cannot grant relief under (b)(6) for any reason which the court could consider under (b)(1). Hall v. Alabama, 700 F.2d 1333, 1338 (11th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983); Gulf Coast Building & Supply Co. v. International Brotherhood of Electrical Workers, 460 F.2d 105, 108 (5th Cir. 1972). The holdings in L.P. Steuart and its progeny are at odds with this established policy. Therefore,

22

relief is unavailable under 60(b)(6) as well.

803 F.2d at 1133 (emphasis supplied).[12]

Based upon the existing record, the Court is unconvinced that the alleged negligence outlined by OneWest in its Rule 60(b) Motion satisfies the standard under Rule 60(b)(6), particularly in view of the decision of the United States Court of Appeals for the First Circuit in  KPS & Assocs., Inc. v. Designs by FMC, Inc. 318 F.3d 1 (1st Cir. 2003).  The Declaration of Attorney Labonte substantiates this view as she wrote to Attorney Pelton indicating that she lacked "100% authority" from OneWest to file an answer to the interpleader complaint, even though the deadline to file an answer had expired.  Moreover, Attorney Labonte exhibited some uncertainty as to the existence and identity of parties who may have had an interest in the mortgage as either holders or servicers.  Absent

---

[12] The court in Solaroll, stated:  "courts are supposed to construe liberally the requirements of Rule 60(b) when reviewing default judgments."  The United States Court of Appeals for the First Circuit unequivocally rejected that liberal approach, stating:

> Although many courts have indicated that Rule 60(b) motions should be granted liberally, this Circuit has taken a harsher tack. "Because Rule 60(b) is a vehicle for 'extraordinary relief,' motions invoking the rule should be granted 'only under exceptional circumstances.'" The rule must be applied so as to "recognize the desirability of deciding disputes on their merits," while also considering "the importance of finality as applied to court judgments."

Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 63-64 (1st Cir. 2001)(citations omitted, footnote omitted).   While noting that Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993)(construing the "excusable neglect standard under Rule 9006(b)(1)), may have relaxed the standard, the court in Deo-Agbasi v. Parthenon Group, 229 F.R.D. 348, 351(D. Mass. 2005), stated that "the First Circuit continues to view the foregoing statement [in Davila-Alvarez] as instructive when read through Pioneer's gloss."

23

evidence of its OneWest's own diligence and clear direction from it to specific attorneys to

perform specific tasks, errors on the part of counsel cannot serve to satisfy the provisions

of Rule 60(b)(6) where it is unclear that the line between excusable neglect and gross

negligence was crossed.   Indeed, OneWest itself initially described prior counsels'

derelictions as administrative errors or foibles.   To the extent that OneWest is convinced

that counsel breached a duty of care in representing its interests, it is free to commence an

action against counsel for malpractice.

In addition, the First Circuit unequivocally has set forth its position that clients are

bound by the conduct of their attorneys.  In Farm Constr. Servs., Inc. v. Fudge, 831 F.2d 18

(1st Cir. 1987), it stated:

> With respect to appellant's claim that sanctions should have been imposed
> on counsel rather than the client, this argument would require us to ignore
> established law. In Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386,
> 8 L.Ed.2d 734 (1962), the Supreme Court expressly stated,
>
>> There is certainly no merit to the contention that dismissal of
>> petitioner's claim because of his counsel's unexcused conduct
>> imposes an unjust penalty on the client. Petitioner voluntarily
>> chose this attorney as his representative in the action and he
>> cannot now avoid the consequences of the acts or omissions of
>> this freely selected agent.
>
> 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1390.
>
> This Circuit, following Link, has turned a "deaf ear" to the plea that "the sins
> of the attorney should not be visited upon the client." Damiani v. Rhode
> Island Hospital, 704 F.2d 12, 17 (1st Cir. 1983). See also, Corchado v. Puerto
> Rico Marine Management, Inc., 665 F.2d 410, 413 (1st Cir. 1981); cert. denied,
> 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); Pease v. Peters, 550 F.2d 698,
> 701 (1st Cir. 1977).

Fudge, 831 F.2d at 21.  Pursuant to the First Circuit's direction in Fudge, and the record of

proceedings in the case, which exhibits a consistent pattern of inattention and neglect with respect to the Property, the Court concludes that the extraordinary relief requested under Rule 60(b)(6) is unwarranted based upon the conduct of prior counsel.

With respect to the factors set forth in <u>Ungar</u>, 599 F.3d at 83-84, the Court finds that the delay by OneWest in seeking the surplus funds was remarkable. Not only was it defaulted in the state court, it waited over five months to seek relief from the denial of its Disbursement Motion. Its actions in failing to defend the interpleader action; in permitting the Trustee to intervene in that action and to obtain an order, dated October 26, 2011, requiring the clerk of the Bristol Superior Court to remit the surplus proceeds to her; in failing to contest her proposed use of the surplus funds set forth in Status Reports and disclosure statements; in waiting over a year from the filing of the Trustee's first Status Report on October 287, 2011 before filing the Disbursement Motion on December 12, 2012; and in failing to appear at the January 16, 2013 hearing on the Disbursement Motion, have caused the Trustee to expend considerable time and effort with respect to the surplus funds to the detriment of the bankruptcy estate. These facts suggest that OneWest was disorganized and failed to effectively communicate with its counsel. Were these the only circumstances, denial of the Rule 60(b) Motion would be warranted.

One factor, however, compels a different conclusion. That factor is the existence of OneWest's meritorious claim to the surplus funds. In view of the undisputed facts that only now has been presented to the Court as documentary evidence, it is clear that the

surplus funds are not property of the bankruptcy estate.[13]  The Debtor executed a note in

favor of NetBank and executed a mortgage in favor of MERS on May 9, 2005.  On April 24,

2006, she deeded the Property to her mother, Ann Balser.  On May 10, 2010, the Condo

Association obtained a judgment and order permitting it to sell the Property for non-

payment of condominium expenses, and on May 14, 2010, the Condo Association caused

Jeffrey Mann of Paul E. Saperstein Co., Inc., to conduct an auction sale of the Property at

which a third party, Eric Birt, was the successful buyer.  Although Ann Balser purported

to convey the Property to the Debtor on July 27, 2010, she no longer had an interest in the

Property to convey.

In sum, the documentary evidence submitted after the hearing on the Rule 60(b)

Motion clearly establishes that the bankruptcy estate has no interest in the surplus funds.

Had this Court been presented with this *evidence* in prior proceedings in the case, the Court

would not have denied the Disbursement Motion.  The Court, however, has discretion to

reconsider its own orders, especially where the issue presented by the Disbursement

Motion presents purely a question of law not seasonably raised in connection with the

Disbursement Motion due to OneWest's failure to appear.  *See* <u>Patriot Portfolio, LLC v.

Weinstein (In re Weinstein)</u>, 164 F.3d 677, 686 (1st Cir. 1999), *cert denied*, 527 U.S. 1036

(1999).

---

[13] The Court recognizes that at various times in this case, parties have indicated
that Ann Balser owned the Property.  The facts set forth in this decision, however, are the
result of a "forensic" examination of the docket, as well as review of the Declarations
submitted by counsel.  The Court only now is required to determine the ownership of the
Property with the benefit of the Declaration of Attorney David G. Thomas, together with
the note, mortgage and deeds pertinent to the issue.

As a result of the auction sale and because OneWest had a mortgage lien by way of

assignment from MERS, it has an equitable lien against the proceeds.  The court in <u>RFF</u>

<u>Family P'ship, LP v. Link Dev., LLC</u>, __ F.Supp.2d __, 2013 WL 450150 (D. Mass. Feb. 5,

2013), explained:

> Under Massachusetts law, the holder of the equity of redemption does not
> have a property interest in foreclosure proceeds unless and until all
> outstanding liens on the property have been extinguished. <u>Perry v. Blum</u>, 629
> F.3d 1, 14 (1st Cir. 2010) (internal citations omitted). A junior lienholder has
> an equitable lien, transferred from the foreclosed premises, that attaches to
> the foreclosure surplus.

2013 WL 450150 at *10.  Similarly, in <u>First Colonial Bank for Sav. v. Bergeron</u>, 1993 Mass.

App. Div. 228, 1993 WL 545301 (Dec. 24, 1993), *aff'd*, 38 Mass. App. Ct. 136, 137-38 (1995),

the court observed:

> When the property at issue was sold at foreclosure by the first mortgagee, the
> second mortgagee or junior lienholder held an equitable lien which was
> transferred to any surplus proceeds after the foreclosure sale. <u>Knowles v.</u>
> <u>Sullivan</u>, 182 Mass. 318, 319 (1902); <u>Wiggin v. Heywood</u>, 118 Mass. 514
> (1875). By virtue of the foreclosure sale, Ford, as the second mortgagee,
> acquired the equitable interest in the lien title. <u>Knowles v. Sullivan</u>, *supra*
> at 319. In such cases, the surplus proceeds are held as trust property for the
> benefit of any junior lienholder as the only party in interest. <u>Bennett v.</u>
> <u>Perkins</u>, 214 Mass. 449, 451 (1913).
>
> While the foreclosure of the senior mortgage would discharge junior liens,
> the interest of the junior lienor in the proceeds is not extinguished. That party
> has an interest in the proceeds of the sale and is entitled to any surplus to the
> extent of that interest in trust. <u>Pioneer Credit Corporation v. Bloomberg</u>, 323
> F.2d 992, 993 (1st Cir.1963). Pursuant to G.L. c. 183, s. 27, Ford is entitled to
> "all sums then secured by the mortgage, whether then or thereafter payable,"
> even if the foreclosure sale was initiated by a senior mortgagee. <u>Id.</u> at 994.

<u>Bergeron</u>, 1993 WL 545301 at * 2.

Had the Trustee been in a position to commence an action to avoid the conveyance

of the Property from the Debtor to her mother, Ann Balser, the balance of the equities would favor the Trustee. In view of the present record, however, and despite the Debtor's description of the Property as being held in trust, there simply is no evidence to support the conclusion that the surplus funds are property of the Chapter 7 bankruptcy estate as the deed contained no reference to Ann Balser holding the Property as trustee of a trust in which the Debtor was a beneficiary.

Having determined that exceptional circumstances exist where the Trustee is proposing to retain and use the surplus funds from the Property, which property is not property of the estate, the Court must balance the relief available under Rule 60(b), which is "inherently equitable in nature," Ungar, 599 F.3d at 83, and the harm to the estate caused by OneWest's dilatory conduct. To minimize harm to the estate, the Court shall condition relief to OneWest on the payment of the Trustee's reasonable attorney's fees related to the Property.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting OneWest's Rule 60(b) Motion conditioned upon its prompt payment of the Trustee's reasonable attorney's fees directly related to surplus funds. The Court shall enter an order directing the Trustee to file an Application for Compensation within 14 days of the date of its order.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 23, 2013

28